Good morning, may it please the court. My name is Eitan Casteljanic and I am representing Jay Howell in this appeal. Howell is a disabled veteran who applied for social security disability benefits in August of 2015 after the VA advised him to do so. He's been unable to work since July of 2015 due to a number of physical impairments affecting his ability to stand, sit, walk, uh, his need to lie down, his, uh, and his very significantly his ability to use his hands. As a result of all of his impairments, Howell is far more limited than he was found to be by the ALJ. He's limited to only sedentary work with only occasional reaching, handling, fingering, and feeling. He can only lift and carry about five pounds. He can only sit for about 25 to 30 minutes before he has to get up. He can only stand for 15 to 20 minutes before he has to sit down. He can only walk for about 50 to 60 feet before he has to stop and rest. He needs to be able to recline for several hours per day to relieve pain and he needs to have ready access to a nearby bathroom. In fact, in his testimony, he testified in his first hearing, there have been three hearings here, this hearing back in October 2016, he testified that he was spending four to five hours a day in his recliner in order to relieve the pain. The ALJ erred here by improperly rejecting the medical opinion of Howell's treating nurse practitioner at the VA, Maria Wilder. Her opinion is well supported by Howell's clinical findings and the ALJ did not state any legitimate reason for rejecting it. Now I use the term legitimate here because this case is under the old medical evidence rules. It's a little confusing because on the one hand, because Ms. Wilder was not an acceptable medical source under the old rules, it's arguable that the ALJ would only have to state germane reasons for rejecting her opinion. He did not even do that. But in addition, under the old rules, there's Social Security ruling 06-03P, which states that under certain circumstances, the opinion of a non-acceptable medical source such as Maria Wilder could be entitled to more weight than the opinions of any of the acceptable medical sources. And this is such a case. The ALJ also erred both by improperly and that but also even more significantly, the ALJ entirely failed to evaluate the findings and opinions of Dr. Ho and Dr. Jiang, whose medical opinions support the rating decisions. Can I ask you a question about the VA disability rating? Please. Your client continued to work after getting the VA disability rating. Would that be an acceptable basis for the ALJ saying, I'm not going to credit that rating? I think it would be an acceptable basis for during the time period in which he was continuing to work. He did not apply for Social Security disability until after he was no longer able to work. But the VA rating, the disability rating from the VA was earlier in time. It was before the onset date. That is correct. And then after the VA disability rating was granted, if you will, your client continued to work. The VA said he was, for their purposes, 100 percent disabled. Why can't the ALJ look at that and say, well, I'm not going to credit the VA rating because even though they thought he was 100 percent disabled, he continued to work and indeed sought unemployment compensation thereafter, representing that he was ready to work. Okay. Your factual summary is not fully accurate. It never is. Tell me where I'm inaccurate. Okay. The VA found that he had been disabled back to, let's see, December 2013. But that came out much closer to when he actually stopped working. So they went retrospectively. But the record does indicate that he continued to work after getting the VA rating. Not for very long. But yes, he did. He continued to work. The VA has very different. This is the thing. There are some differences between the VA's rules and Social Security's rules. And so sometimes I don't I think that certainly during the time period in which he was continuing to work, I think that would have been a valid reason to make an independent determination. In fact, Social Security would have denied his claim at step one because he was continuing to work. Once he was no longer able to work, I think it becomes a different picture. Now, the most important thing here is not that the VA said we find you 100 percent disabled. The biggest error with VA's evidence is that the ALJ didn't even discuss the evaluation which supported that determination. And there's no valid reason under Social Security regulations or under case law for the ALJ to disregard that evidence. But in retrospect, looking back, it appears that the VA got it right. I mean, he had a lot of problems and he did reach the point where he was unable to sustain work. The other error in the ALJ's decision, which I think is very significant in a case like this, which is so heavily, the pain and the symptoms are so important as to why Howell has been unable to work. The ALJ rejected Howell's testimony about his symptoms, but none of the ALJ's reasons are specific, clear and convincing. And there's one in particular I want to address, which is the fact that Howell did not want to have carpal tunnel surgery. He was afraid of having surgery because he was afraid it would diminish his function even beyond where it already had become reduced. And he had been told by one surgeon that it wasn't advisable. He was told by another, well, we could do it, but I can't say that you won't still have numbness. He chose not to do the surgery. He was afraid of doing it. He had enough problems and just was afraid to do it. Anyway, none of the ALJ's reasons for rejecting his testimony are convincing. As a result of the ALJ's errors, his residual functional capacity is definitely not even close to Howell's actual functional capacity. We therefore ask that the case be gone for more than seven years, and the evidence that was improperly discredited with support of finding of disability, we ask the court to so rule. I would like to reserve my remaining time for rebuttal. Thank you. Good morning. May it please the court. Jeff Staples for the Commissioner, who asks that you affirm the District Court's judgment because substantial evidence supports the ALJ's fact-finding. Howell is an individual that came to the ALJ and said that even with medication, his pain was so severe that it was either a nine or a ten out of ten. But the fact of the matter is that Howell worked, as Judge Hurwitz was pointing out, for many years in spite of these same impairments. And although he claimed that he became unable to work on that alleged onset of disability date, the fact of the matter was that the reason he actually stopped working was because his employer lost a contract. But that's not what the ALJ said. In other words, it seems to me one could construct a rejection of his claim along the lines that you're talking about. The ALJ said nobody has pain nine out of ten. If you had pain nine out of ten, and who knows what the definition of nine out of ten is, you wouldn't be able to stand up, you'd be on the floor. So he chose the wrong number by the ALJ's estimate. And then the ALJ says, and your pain seems to be well managed by conservative techniques, although several of the treating physicians says that when he reaches his arm past a certain level, he has severe pain. None of those are dealt with by the ALJ. And the only conservative method I can see here that's in the record is a TENS machine. So is the ALJ's view that he should wear a TENS machine to work? I don't think that the ALJ was saying he should wear the TENS machine to work, and there's no Well, the difficulty is there's several reports, not only the nurse, but several of the doctors, that talk about a very limited range of motion and severe pain coming from that range of motion. But the hypothetical to the VE talks about occasionally having to do those things. And what in the record supports the occasionally hypothetical? So, Your Honor, what you're talking about, that range of motion testing, I think it's important to note that the doctor who did that range of motion testing, Dr. Leinenbach, found that Howell was exaggerating his limitations on specifically the range of motion and strength. So Dr. Leinenbach... Thought he was exaggerating them or that he couldn't tell? No, Dr. Leinenbach said that the test results were not a reliable indicator of Howell's abilities because he was self-limiting his... Again, did the ALJ say that? Yes, Your Honor. The ALJ said, I'm rejecting the other doctors who say, or the nurse who says, he's got very limited range of motion and has severe pain. I'm rejecting it because Dr. so-and-so says the tests are not reliable. Yes, Your Honor. The ALJ absolutely went into that analysis when discussing Dr. Leinenbach's opinion and said, okay, I see here that he says... No, he didn't. I understand why he doesn't accept Dr. Leinenbach's analysis, because Dr. Leinenbach is sort of self-contradictory. He says, my tests may not be reliable. But that's where that limitation came from. Doesn't it also come from the nurse practitioners? And my mistaking the name, isn't there also a Dr. Ho in this case who comes up with... There's more than one expert offered up by Mr. Howell. Yes. And I'm trying to find why those other experts were rejected. Well, I think the ALJ did return to that exaggerated testing throughout the decision. But I don't... I mean, I can go back and look. But one of the other things that the ALJ pointed out with regard to, for instance, Nurse Wilder, and as counsel pointed out, the ALJ needed only marshal germane reasons to discount her opinion. But one of those reasons was the continued work activity in spite of these allegations. So whatever his shoulder restrictions were, and the ALJ agreed. The ALJ agreed that Howell did have a shoulder impairment and said that they did cause some limitations. However, looking at the... He didn't continue to work after being examined by Wilder, did he? My understanding is... No, no, no. Her examination was after... That was 2018. He ceased work. Yeah. So how could his continued work have undermined her opinion? Well, so what Howell said about his impairments were that they stopped him from working in June or July, I can't remember which, 2015. On set date. Yeah. And the problem with that is that, you know, as the ALJ pointed out, that's not why he stopped working. He stopped working because his employer's contract ran out. Thereafter, he didn't, you know, fold up shop. He went and applied for unemployment benefits and received them and held himself out as available, ready and willing to work. When asked about this at the hearing, the ALJ said, well, you know, you're telling them you can work and you're telling me you can't work. So if someone had offered you a job, you're applying for all these jobs. He admitted he continued to apply for jobs. The ALJ said, well, you're telling me you can't work. If you had gotten a job, would you have taken it? And he said, yes. So these impairments that he claimed were preventing him from working were not actually the things that were preventing him from working. It was just the fact that he didn't get hired by all these jobs that he was applying for. So when you've got the work activity, when you've got the fact that he stopped for reasons unrelated to that work activity, when you've got the continued application for jobs that he admitted he would have done and the exaggeration on test results, and you put that stuff together with, you know, some of the other things like the improvement with conservative treatment, the TENS unit that he said was tremendously helpful, that record does not go together with the level of limitation that Howell and, you know, Nurse Wilder were describing. So, you know, maybe a different fact finder could have looked at these facts and reached a different conclusion, but that's not the standard here. The standard is whether the ALJ's decision is supported by more than a mere scintilla of evidence. This work activity, this exaggeration, that forms much more than a mere scintilla of evidence supporting the ALJ's conclusions. I take it what the other side is not arguing is that, well, he is because he's seeking credit, it's true, but assuming that what he's really saying is that, not that there isn't evidence from which an ALJ could have reached a conclusion, but in reaching that conclusion, the ALJ, operating under the old regs, didn't give sufficient weight to certain opinions. Right, but... So it can be true that an ALJ erred under the old regs by not giving sufficient weight, but there nonetheless is more than a scintilla of evidence to support his position. Yeah, and I may have misspoken. What I meant is that there's more than a scintilla of evidence supporting the ALJ's analysis of these opinions. And so when the ALJ marshals this evidence, when the ALJ looks at the record as a whole and brings that to bear on the decision to give more or less weight to these opinions, you know, the ALJ on the one hand has Howell and Nurse Wilder saying, you know, these very extreme limitations. And then on the other hand, and the ALJ goes into this analysis in quite a good amount of detail about all the other evidence that showed that he was less limited. So when the ALJ puts those things together and says, these just don't line up, that's where the ALJ's finding about the medical opinions is reasonable. And that's why this court should affirm. There's a dearth in this ALJ opinion of discussion of back and shoulder symptoms. And a lot of discussion of carpal tunnel and gastrointestinal, etc. Is that a problem? In other words, there's some very specific opinions about back and shoulder. And I'm not sure how well, how extensively or directly they're confronted. Can you address that for me? Certainly, Your Honor. So the ALJ was not looking at this record without any expertise. The ALJ had a medical expert to rely on that came to the most recent hearing, reviewed all of the medical records, the thousands of pages of medical records, and offered conclusions about what that evidence showed as far as limitations, including the back and the shoulder. Now, that medical expert, Dr. Lebeau, actually said that Howell could frequently reach overhead with either arm. And the ALJ said he decided to temper that opinion in Howell's favor. So the medical evidence and the medical expert suggested that Howell was even less limited than the ALJ found him to be. So I think it's just not the case that the ALJ didn't have anything to go on when you're talking about the back impairment and the shoulder impairment. With that being the case, I see I'm just about out of time. If there are any further questions, I'd be happy to answer them. Otherwise, we'd ask this court to affirm. Thank you for your time. Thank you, counsel. Rebuttal. Thank you. Going in reverse order here, we're starting with Dr. Lebeau, the cardiologist who testified in the hearing. Now, he's also board certified in internal medicine, but notably, he was not board certified in orthopedics, and he did not even notice the shoulder surgery in the file. I don't think he reviewed the file all that carefully. His reaching limitation was nonsense, honestly. Dr. Leibenbach, who actually examined him, it was just one time examination, opined that Howell was limited to only occasional reaching in all directions, due to his shoulder injury. That was the hypothetical post. He could occasionally. Occasionally was the hypothetical, was it not? No, it was not. It was occasionally overhead, not occasionally in all directions. And Dr. Leibenbach had said occasionally in all directions. Back to the unemployment issue, Howell was able, he believed he was able and willing to work. He wanted to work. That does not mean he would have been able to sustain competitive employment, and his condition was worsening during that time period. But there is no exclusion within Social Security from people to receive unemployment benefits, provided that there's a reasonable explanation for any kind of conflicts. And in this case, the explanation is he wanted to work. He would have worked. He would have taken a job if he could have gotten it. The evidence doesn't show that he would be able to keep it or maintain it, but he was certainly going to try because he wanted to work. Back to Dr. Leibenbach. Dr. Leibenbach did not say that Howell was exaggerating. He stated that he was showing pain behaviors and suboptimal effort. And if a person is in pain, if a person is asked to reach in a certain direction or do something by an examining doctor and it hurts them to do it, obviously, they're not going to do it very hard. They're going to have to hold back. And the fact that Dr. Leibenbach identified that as an issue does not in any way, shape or form disqualify his ultimate opinion about the limitations that Howell had. And Howell was actually, his hands were actually more limited than, I mean, Dr. Leibenbach found he only had a three plus grip strength in both hands. That would support his testimony about being able to only occasionally use his hands. Finally, to the TENS unit. The TENS unit, he could only use for 10 minutes a day, 10 minutes at a time, four times a day. So it wasn't an overall solution to enable him to work. And I'm sorry, one last thing with regard to the VA decision. Judge Hurwitz, it was on June 29th, 2015 was when they decided it. And he stopped working very shortly after that. So there wasn't an overlap between their decision finding he was disabled back several years and his actually receiving those benefits or applying for social security. If the court doesn't have any other questions, I ask you to reverse the ALJ's decision and either award benefits or remand this case for a new hearing. Thank you. All right. Thank you to both counsel for your arguments. The matter is submitted. Now, the last case on the argument calendar for this morning and actually for the week is Blue Mountains Biodiversity Project versus Shane Jeffries and US Forest Service.
judges: NGUYEN, HURWITZ, Pregerson